Good morning. May it please the Court and Counsel, Kevin Lafkey on behalf of Plaintiff Appellant Hui Hsu, I'd like to reserve a minute for rebuttal please, splitting my time with the EEOC. Again, I'd probably pick up on some of the comments in the last argument to point out that the trial court's opinion in this summary judgment motion reads more like a trial verdict where the trial judge was hearing the facts and determining the facts than it does a motion for summary judgment opinion. And those aren't stray comments. On almost every page of the trial court's opinion and order on summary judgment, the court doesn't take the facts in the light most favorable to the plaintiff, in fact makes opposite inferences repeatedly. Counsel, I'm going to jump in because you have very little time, if you don't mind terribly. On the Title VII discrimination claim, what's the strongest showing that there was an adverse employment action? Yeah, so I start with the change in job. Why is that? So there wasn't a cut in pay? That's a question, I want to be sure I'm right. There wasn't a cut in pay or benefits, but there was a change in not just job title, but exemption status. Okay, so just if you can slow down, because this is important on my scorecard at least. So she became hourly, that's my, so she had to punt a clock and she had to, I think, did she have to get permission for her breaks, which she needed for her eye drops, or did she, tell me exactly how this is an adverse employment action, please. Yeah, as I'm sure you've seen, the way the breaks were treated changed substantially along with the change in job duties to being non-exempt. And so she was treated differently in regard to her usage of breaks. And one example, Judge, to answer your question and also to pick up on my argument about the inferences is, for example, the trial court says that plaintiff's job duties didn't change. And the record at ER 151- and you just don't have much time, forgive me, but I need an adverse employment action. I appreciate there was a change in status and she went from exempt to non-exempt. I get that, or non-exempt to exempt, but I said that backwards. So she had, I think, less freedom to be taking her eye drops, or I'm trying to figure out how this affected her in an adverse way. I don't think there was a cut in pay. Well, this court has said- She lost her cubicle. Yeah, yeah. What else have you got? And so, again, her job duties were completely changed. That's an adverse employment action by itself. Are they, in one place she said they're more difficult. Can you explain to me how? One was a supervisory position. Yeah, so if you look at ER 151, that's an interview with one of the managers. And she was specifically asked how similar was supply chain management and manufacturing tech positions. Answer, not similar at all. Yes, but one has to be adverse. I appreciate that they're not. I've seen a couple places where it says they're not similar, but- And so you have a change in title. You have a change in classification, meaning exempt to non-exempt. You have the adverse treatment related to the breaks because now she's told, I believe it's ER, let me see, 81, where she's told, now you got to combine your breaks. You go to the bathroom on your break and not otherwise. So I think when you add all this up under the case law of this circuit, that's an adverse employment action because it would, again, impact somebody dramatically. And so I would think just the fact of change from exempt to non-exempt alone would be an adverse employment action under the relevant case law. Because she has to punch a clock, because her breaks are more controlled. Yes, yes, yes, yes. What is the, there's testimony about her reporting that she had to, someone who had to use remnants to pack. How is that an adverse, or is that part of the adverse employment action claim? It's part of the adverse employment action in the sense that they, employer, again, read the record, unlike the trial judge inferences in the light most favorable to the plaintiff, they're saying essentially, well, you know, can we do this? Can we reduce her job duties? Can we change her job duties? Can we reduce her hours? Maybe we need to let her go. The trial judge says, well, there's no evidence of illegal intent. And they're saying maybe we need to let her go. Maybe we reduce her hours. I mean, it's, you know, there is illegal intent. You know, again, I've limited time here. Unlike the other parties, I'd urge this court to reverse, find that the plaintiff's claims meet the current legal standard, and not reverse for review in light of Muldrow, but simply reverse so the plaintiff can try her case and get the opportunity to have a jury hear the facts. Thank you. Have you decided, I'm not sure how you're splitting your time, but we're going to hear from the EEOC next? Yes. Okay, that's fine. Thank you, and good morning, Your Honors. Chelsea Sharon for the EEOC as amicus. We're here today to ask this court to clarify the correct adverse action standards for discrimination and retaliation claims under Title VII. And first is the discrimination claim here. We ask this court to hold that the district court relied on an adverse action standard that has since been abrogated by the Supreme Court's recent decision in Muldrow versus City of St. Louis. The district court here at ER 17 required a showing of tangible and material harm. Muldrow expressly states that neither are required. Excuse me, counsel. I'm sorry. Even if that is true, and it may well be, because the district court didn't have the benefit of that case, nonetheless, the district court did give alternative findings. That's correct, Your Honor. And we have not taken a position on those alternative grounds here. If this court decides it wants to rule on those affirmative grounds, we'd simply ask that you clarify the changed nature of the legal standard with respect to Muldrow and the erroneous standard with respect to the retaliation adverse action standard. But we do not take a position on the alternative grounds here. So I think there's two questions I had that I wasn't sure if you're trying to call out two different errors. I think the one is that you're calling out that Title VII discrimination and Title VII retaliation are separate. That's correct, Your Honor. And they were conflated. The other, when you started to say you're asking us to clarify something, I think Justice Kagan has already done for us. I'm not sure if you need anything. But I appreciate your point. But there's a separate issue, I think, and that is there's two retaliation, state statutory retaliation claims. And one of them is, I think, read identically with Title VII. But the other one, it's the 199, Oregon Statute 659A199 is yet another standard. Were you here to speak about that? Or is that not on your agenda? Not on our agenda. Only the one that's read analogously with Title VII. And I apologize in front of Confucius. OK. So given that, let's just say that we are sold on your argument that there's a new standard. What is your best shot that this ought to be remanded or needs to be remanded? Well, Your Honor, I want to clarify. We have not taken a position on whether the specific employment actions here meet the new Muldrow standard. So we're here simply to ask that it be remanded so that the district court can apply that standard in the first instance because it very clearly relied on a tangible and material harm standard that is no longer the relevant standard. If this court chooses to apply the new standard in the first instance, that is, of course, if you feel you have a sufficient record to do so without remanding, we have no position on that. But we just want to make sure that the correct legal standard is applied in considering the relevant actions here. But we can also make a determination that the district court applied the wrong standard, but then reach also the harmlessness question, correct? That's correct. You're not taking a position on whether the proffered non-discriminatory reason was adequately rebutted on this record? That's correct. We haven't taken a position on that alternative basis for ruling, Your Honors. Any other questions? Nope. Thank you. Thank you, Your Honors. Thank you. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the court. My name is Christine Sargent and I'm here on behalf of defendant appellees Lightsmith and Finisar, and I'll collectively refer to them as Finisar. I'd like to briefly start out with Muldrow, since that's where the court is understandably asking questions. Muldrow plays a tiny role in this case. Only one of the six categories of issues on appeal are even implicated by Muldrow at all. And remanding the district court's decision in full, as requested by appellant, would disregard the multiple separate independent reasons that the court granted summary judgment. To be clear, and Your Honors noted this already, Muldrow expressly reserved the standard for adverse actions in retaliation cases. And I think that's really important here because appellant has focused a lot of her arguments, the majority of her arguments, on temporal proximity. And that is only relevant in the retaliation context. I'd like to speak to a few of the other claims on appeal that aren't the Title VII discrimination claims. Wrongful discharge. Appellant could not have been both constructively discharged and wrongfully terminated. Finisar ended appellant's employment because she, by her own admission, did not return from her 30-day personal leave of absence after being notified that if she did not return, that pursuant to Finisar's policy, she would be considered to have voluntarily resigned. All of those facts are undisputed. She makes no effort to prove pretext aside from utilizing a straw man argument and pointing to her good performance. That, to be clear, appellees have never, on this record or otherwise, contended that her termination had anything to do with performance. So her rebuttal of a nondiscriminatory reason that Finisar never even proffered proves nothing. A constructive discharge claim requires an employee to show that the working conditions were objectively intolerable at the time of the resignation. And as the district court noted, nothing in this case even approaches that standard. But even so, the record reflects that she was actually disappointed that she couldn't return to her position, which hardly supports a constructive discharge claim. Or a hostile work environment claim. That's exactly right. Or a hostile work environment claim. And if she can't even prove a hostile work environment claim, and she can't demonstrate that she was subjected to conduct because of her protected class, that the conduct was not welcome, and that the conduct was sufficiently severe and pervasive as to change the terms and conditions of her employment, then she certainly doesn't have a constructive discharge claim. And as the district court correctly ruled, she also was unable to satisfy the hostile work environment standard either. So, counsel, if you could engage on, I'm not pushing, I don't hear any pushback on some of these other claims, but there is, you know, it's often the case that if a court has applied to an incorrect standard, and as Judge Edwards said, our court didn't have the standard, was applying Ninth Circuit, I think, authority that has been abrogated, that we would often remand. And then there's this other problem. So that's on the Title VII discrimination claim. But then there's this other question. It seems to be about applying the same standard for the Title VII discrimination and Title VII retaliation claims. And then yet another issue about the two state retaliation claims. Those are all different. So what is your best shot at convincing us that we shouldn't at least remand for the district court to take a first run at these correct standards? So, first of all, this court, there is Ninth Circuit authority and every other circuit, I believe, that this court can affirm a district court's... We know the law. I just want to know what's your... Even if you're wrong. Apply it to this case. Okay. And she points to three alleged adverse actions. She points to the alleged demotion, which we disagree is a demotion at all. Second, she points to the May 2018 performance review. And third, she points to the offer of severance. None of those rises to the level of an adverse action under the standard articulated before Muldrow and under the standard under Muldrow. She has to demonstrate... Hold on. Before you go farther, if I can, I think we understand the standard pretty clearly. Supreme Court's told us what the standard is, but just on the facts, her briefing and counsel at argument is saying there's other adverse actions as well. That the demotion requires that... Then she's hourly. She's got this situation with the breaks and the eye drops, the need to use eye drops. What about those points which aren't on your list? So, those fall under the restructuring slash alleged demotion. She says that there's three aspects to that demotion, alleged demotion, that make it an adverse action. Loss of prestige of title, the change from exempt to non-exempt, and the change in job duties. She alleges at least one place that the job was more difficult, and then this restructuring bit and the exempt part, I think, filters out about being adverse as applied to her because of the eye drops. That's what I see in this record. So, the appellant admitted that she was never denied any request for accommodation as it relates to the eye condition, the eye drops. So, she was never denied. There's nothing in the record to suggest that she was ever denied breaks to put in her eye ointment. I think it's also notable on the exempt to non-exempt reclassification. They've cited to no case law suggesting that that indicates that there's been an adverse action. They actually cite to one case where the court affirmed summary judgment in favor of the employer, and in that case, the employee was being reclassified from non-exempt to exempt, and the court actually discussed that being non-exempt is arguably a better position for the plaintiff to be in because they are entitled to overtime. So, there's simply no case law in contrast to what appellees have cited in their briefing to suggest that reclassification in any way supports that there's been an adverse action. It makes an argument here about the reclassification that I haven't seen in other cases about the loss of prestige, the loss of the, depending on your perspective, responsibility for or ability to supervise, and then the cubicle, loss of cubicle. Is there, is there case law that supports those kinds of features of a job? So, frankly, that's not what the record supports is what happened. She's a bandit. I'm asking a different question, which is, is there case law that supports that type of change being an adverse employment action? So, the standard is that there has to be a material change in the working conditions. So, we would not, I don't believe that there would be case law that says that those few examples that you've just articulated would support there's been an adverse action. Because then you get to the separate issue of why was that done in the first place? Was there a causal connection? Was it done because that she, because the person, because the employee was in a protected class or had engaged in protected activity? Hopefully that answers your question. I'd like to briefly touch on the discrimination, or apologies, the disability claim. Summary judgment was proper on that claim as well. She testified and pled in her initial complaint that her only disability related to her eye condition. During her deposition, she admitted that the condition did not impact her daily life, thus rendering it not even a qualifying disability. But even if we concede that it was a disability, there's no dispute that FANASAR granted every accommodation that she requested. She very clearly admitted that in her deposition. And to be clear, because Your Honor brought up breaks for eye ointment, this case is not about a failure to accommodate her high blood pressure, anxiety, hypertension, or shingles. And the reason I bring that up is because they've pointed to this November 2018 doctor's note. That's a new position taken on appeal. And I just want to make it clear for Your Honors that that contradicts her sworn testimony. And the only disability alleged in this case is the eye condition. Yep. Got it. Unless Your Honors have any further questions, we'll rest on the briefs. It does not appear that we do. Thank you. Thank you. Thank you. Muldrow expressly holds that a loss of prestige could qualify as actionable harm to a less prestigious job. And as plaintiff said in her declaration, paragraph 13, it's at ER 259, the restructured role that was offered to me was significantly more physically demanding and a far less prestigious job. And so again, the trial court didn't credit those inferences in the light most favorable to plaintiff as it should have. And as I mentioned at the beginning, the record is replete with that. I would close with just these two thoughts. At ER 128 to 135, you see the complaint of a coworker, Dolores Chavarria, who again, you won't see that name anywhere in the trial court's letter opinion. When the trial court repeatedly says plaintiff doesn't corroborate, plaintiff doesn't provide evidence, plaintiff doesn't back it up, it's just not accurate. Finally, I'd urge you to review ER 185. Essentially, the top three managers of defendant are essentially collaborating, conspiring, if you will, to force Ms. Hsu out. And again, there's abundant evidence of their ill intent towards plaintiff. Maybe we should let Hue go, is what they said. They had an illegal intent and it resulted in illegal harm. Thank you. Thank you all for your advocacy. We'll take that case under advisement.
judges: CHRISTEN, NGUYEN, Ezra